# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CIVIL ACTION NO. 5:20-CV-043-GCM-DCK

| | |
|---|---|
| **DAWN PRUETT** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) MEMORANDUM AND |
| | ) RECOMMENDATION |
| **KILOLO KIJAKAZI,** | ) |
| **Acting Commissioner of Social Security,**[1] | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

**THIS MATTER IS BEFORE THE COURT** on "Plaintiff's Motion For Summary Judgment" (Document No. 15) and "Defendant's Motion For Summary Judgment" (Document No. 18). This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b). After careful consideration of the written arguments, the administrative record, and applicable authority, the undersigned will respectfully recommend that "Plaintiff's Motion For Summary Judgment" be <u>denied</u>; that "Defendant's Motion For Summary Judgment" be <u>granted</u>; and that the Commissioner's decision be <u>affirmed</u>.

## I. BACKGROUND

Plaintiff Dawn Pruett ("Plaintiff"), through counsel, seeks judicial review of an unfavorable administrative decision on her application for disability benefits. (Document No. 1). On or about June 28, 2016, Plaintiff filed an application for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. § 1383, alleging an inability to work due to a disabling condition beginning April 26, 2015. (Transcript of the Record of Proceedings ("Tr.")

---

[1] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of Social Security. Accordingly, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is hereby substituted for Andrew M. Saul as Defendant in this action.

16, 178). The Commissioner of Social Security (the "Commissioner" or "Defendant") denied Plaintiff's application initially on or about December 19, 2016, and again after reconsideration on March 6, 2017. (Tr. 16, 101, 110). In its "Notice of Reconsideration," the Social Security Administration ("SSA") included the following explanation of its decision:

> The medical evidence shows that your condition is not severe enough to be considered disabling. You are able to think, act in your own interest, communicate, handle your own affairs, and adjust to ordinary emotional stresses without significant difficulties.
> We do not have sufficient vocational information to determine whether you can perform any of your past relevant work. However, based on the evidence in file, we have determined that you can adjust to other work. It has been decided, therefore, that you are not disabled according to the Social Security Act.

(Tr. 110).

Plaintiff filed a timely written request for a hearing on March 15, 2017. (Tr. 16, 120). On February 12, 2019, Plaintiff appeared and testified at a video hearing before Administrative Law Judge Daniel S. Campbell (the "ALJ"). (Tr. 16, 31-52). In addition, Rebecca Kendrick, a vocational expert ("VE"), and Matthew S. Water, Plaintiff's attorney, appeared at the hearing. (Tr. 31-52).

The ALJ issued an unfavorable decision on February 20, 2019, denying Plaintiff's claim. (Tr. 16-25). On April 18, 2019, Plaintiff filed a request for review of the ALJ's decision, which was denied by the Appeals Council on February 23, 2020. (Tr. 1-7, 176). The ALJ decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's review request. (Tr. 1).

Plaintiff's "Complaint" seeking a reversal of the ALJ's determination was filed in this Court on April 3, 2020. (Document No. 1). On September 11, 2020, the undersigned was assigned to this case as the referral Magistrate Judge.

2

Plaintiff's "Motion For Judgment On The Pleadings F.R. Civ. Pro. 12(c)" (Document No. 15) and "Memorandum In Support Of Plaintiff's Motion For Judgment On The Pleadings F.R. Civ. Pro. 12(c)" (Document No. 16) were filed on November 2, 2020; and "Defendant's Motion For Summary Judgment" (Document No. 18) and "Memorandum Of Law In Support Of Defendant's Motion For Judgment On The Pleadings" (Document No. 19) were filed January 4, 2021. Plaintiff's "Reply To Memorandum In Support Of Defendant's Motion For Judgment On The Pleadings" (Document No. 20) was filed January 19, 2021.

The pending motions are ripe for disposition, and therefore, a memorandum and recommendation to the Honorable Graham C. Mullen is now appropriate.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner applied the correct legal standards. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner – so long as that decision is supported by substantial evidence. Hays, 907 F.2d at 1456 (4th Cir. 1990); see also, Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence has been defined as 'more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401).

3

Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence. Hays, 907 F.2d at 1456; King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case de novo when reviewing disability determinations."); Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion."). "[A] reviewing court must uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." Peace v. Berryhill, 2019 WL 2406626, at *1 (4th Cir. June 7, 2019) (quoting Brown v. Comm'r Soc. Sec. Admin., 873 F.3d 251, 267 (4th Cir. 2017)). Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION

The question before the ALJ was whether Plaintiff was under a "disability" as that term of art is defined for Social Security purposes, at any time between June 28, 2016, and the time of his decision[2] (Tr. 16). To establish entitlement to benefits, Plaintiff has the burden of proving that she was disabled within the meaning of the Social Security Act. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled. 20 C.F.R. § 404.1520(a). The five steps are:

---

[2] Under the Social Security Act, 42 U.S.C. § 301, the term "disability" is defined as an: inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

4

(1) whether claimant is engaged in substantial gainful activity - if yes, not disabled;

(2) whether claimant has a severe medically determinable physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509 - if no, not disabled;

(3) whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1, and meets the duration requirement - if yes, disabled;

(4) whether claimant has the residual functional capacity ("RFC") to perform her/his past relevant work - if yes, not disabled; and

(5) whether considering claimant's RFC, age, education, and work experience he/she can make an adjustment to other work - if yes, not disabled.

20 C.F.R. § 404.1520(a)(4)(i-v).

The burden of production and proof rests with the claimant during the first four steps; if claimant is able to carry this burden, then the burden shifts to the Commissioner at the fifth step to show that work the claimant could perform is available in the national economy. Pass, 65 F.3d at 1203. In this case, the ALJ determined at the fifth step that Plaintiff was not disabled. (Tr. 24-25).

First, the ALJ determined that Plaintiff had not engaged in any substantial gainful activity since June 28, 2016, his application date. (Tr. 18). At the second step, the ALJ found that social anxiety disorder, attention deficit hyperactivity disorder, posttraumatic stress disorder, lumbar scoliosis, degenerative disc disease, and bipolar disorder were severe impairments.[3] (Tr. 18-19). At the third step, the ALJ determined that Plaintiff did not have an impairment or

---

[3] The determination at the second step as to whether an impairment is "severe" under the regulations is a *de minimis* test, intended to weed out clearly unmeritorious claims at an early stage. See Bowen v. Yuckert, 482 U.S. 137 (1987).

5

combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. 404, Subpart P, Appendix 1. (Tr. 19-20).

Next, the ALJ assessed Plaintiff's RFC and found that she retained the capacity to perform sedentary work activity, with the following limitations:

> except she requires the use of a single-point handheld assistive device to assist with ambulation. She can occasionally climb ramps or stairs but never climb ladders, ropes, or scaffolds. She can occasionally balance, stoop, kneel, or crouch but never crawl. She cannot work at unprotected heights or around moving mechanical parts. She is limited to the performance of simple, routine tasks with simple work-related decisions and no more than occasional change in a routine work setting. She can have frequent interactions with coworkers and supervisors but only occasional interaction with the public.

(Tr. 20). In making his finding, the ALJ specifically stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 416.828 and SSR 16-3p." Id.

At the fourth step, the ALJ held that Plaintiff had no past relevant work. (Tr. 24). At the fifth and final step, the ALJ concluded based on the testimony of the VE and "[c]onsidering the claimant's age, education, work experience, and residual functional capacity" that jobs existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 24). Specifically, the VE testified that according to the factors given by the ALJ, occupations claimant could perform included a sorter, a final assembler, and a table worker. (Tr. 25, 50). Therefore, the ALJ concluded that Plaintiff was not under a "disability," as defined by the Social Security Act, at any time between June 28, 2016, and the date of his decision, February 20, 2019. (Tr. 25).

Plaintiff on appeal to this Court makes the following assignment of error: "[t]he ALJ fails to incorporate non-exertional limitations on the ability to stay on task where the ALJ first

6

Case 5:20-cv-00043-GCM-DCK   Document 21   Filed 09/09/21   Page 6 of 16

finds that Pruett was *moderately impaired in the maintenance of concentration, persistence, or pace.*" (Document No. 16, p. 11) (citing Tr. 19-20). The undersigned will discuss this contention below.

**Ability to Stay on Task**

Plaintiff argues that the ALJ gave a limited RFC "without sufficient explanation" for the exclusion of non-exertional limitations related to Plaintiff's ability to maintain concentration, persistence, or pace. Id. (citing Tr. 20) and Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015).

Plaintiff leans on Mascio, stating "the Fourth Circuit held that an ALJ does not account for a claimant's moderate limitations in concentration, persistence, and pace by restricting the mental RFC or the hypothetical question to the vocational expert to simple routine or repetitive tasks." Id. Plaintiff argues the case under review is "closely analogous" to Mascio. (Document No. 16, p. 11). Further, Plaintiff notes that the Fourth Circuit determined "the ability to perform simple tasks" as outlined in the ALJ's RFC determination "differs from the ability to stay on task" because "only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." Id. at 12; (quoting Mascio, 780 F.3d at 638). To that end, Plaintiff asserts that the "ALJ fails to include a restriction in the RFC that accommodates 'on task behavior,' or moderate limitations in concentration, persistence, and pace." Id.

Though the ALJ adds limitations "such as simple work-related decisions and no more than occasional changes in routine work setting," Plaintiff argues those terms do not address the concentration, persistence, or pace issues, nor do they address her inability to work a full day. (Document No. 16, p. 12) (citing Flannery v. Saul, 2020 WL 4437471 at *3 (W.D.N.C. Aug. 3, 2020)). However, Plaintiff acknowledges that "[s]o long as the ALJ does not ignore the claimant's limitation in concentration, persistence, or pace, and explains why further limitations

7

in the RFC are not warranted, the ALJ satisfies his duty under *Mascio*." (Document No. 16, p. 13)(quoting Howard v. Saul, 3:19-CV-531-KDB, 2020 WL 2199629 at *3 (W.D.N.C. May 6, 2020)). Plaintiff suggests that the ALJ's explanation here is nonetheless insufficient. Id. at 14.

Plaintiff argues that the ALJ "relies solely on a few check boxes found on the Adult Function Report at Exhibit 4E" to conclude Plaintiff "retains some functional ability," while the ALJ "ignores statements within the same report that contradict his conclusion." Id. at 14 (citing Tr. 217-25). Plaintiff notes that the ALJ does not define "some functional ability," and even though Plaintiff is capable of simple tasks "from time to time," the ALJ does not indicate what Plaintiff can do "on a sustained basis." Id. (citing Tr. 220). The lack of a definition for "some functional capacity," Plaintiff argues, means the ALJ has failed to "build an accurate and logical bridge from the evidence to his conclusion." (Tr. 15) (citing Brown v. Commissioner Soc. Sec. Admin., 873 F.3d 251, 269 (4th Cir. 2017) (finding that an ALJ does not "build an accurate and logical bridge from the evidence to his conclusion")).

Plaintiff next cites the SSA rules, which note that an ability to perform certain functions in familiar settings "does not necessarily show how you would function in a work setting on a sustained basis, throughout a normal workday or workweek." (Document No. 16, p. 16) (quoting 20 C.F.R. Pt 404, Subpt. P, App. 1 § 12.00.D.3.b). Plaintiff notes that the routine activities she described performing all occur in her home environment. (Document No. 16, p. 16) (citing Tr. 218, 224). Further, Plaintiff testified that she dislikes going in public because of her anxiety. (Document No. 16, p. 16) (citing Tr. 45). Plaintiff argues that the ALJ's failure to "recognize that the ability to perform some daily tasks occasionally does not imply that Pruett can perform work activities on a regular and continuing basis," supports reversal or remand of the ALJ's decision. Id.

8

Plaintiff next cites evidence from an examination performed by Michael Fiore, PhD, in which he concluded Plaintiff "may experience moderate difficulties understanding, retaining, and following simple instructions due to ongoing problems with short attention and concentration, and difficulty with chronic anxiety, and problems associated with posttraumatic stress." Id. at 17 (quoting Tr. 637). Dr. Fiore stated that Plaintiff's:

> ability to relate to others including coworkers and supervisors on a day-to-day basis appears to be moderately-to-severely impaired. She may experience moderate-to-severe difficulties tolerating ongoing stresses and pressures associated with day-to-day work routines. Dr. Fiore further concluded that [Plaintiff] 'may require assistance at times in managing her personal, financial, and business affairs due to the longstanding problems with attention deficit and anxiety as well as difficulties related to posttraumatic stress.

Id. (quoting Tr. 638).

Plaintiff notes that the ALJ found that her mental symptoms were "not entirely consistent" with the overall medical evidence. (Document No. 16, p. 17). Plaintiff observes that the ALJ supported this conclusion by citing increased medication dosage and care that Plaintiff was receiving to indicate that Plaintiff's symptoms were controlled. Id. at 17-18 (citing Tr. 22). Plaintiff challenges the ALJ's reasoning, arguing that the increased dosage and treatment far more likely indicates that "her symptoms were out of control." Id. at 18

Finally, Plaintiff contends that the ALJ's conclusion that Plaintiff "can function well in spite of her mental impairments," is based on a single visit to her primary care provider and a visit to a mental health provider related to a complaint about hair loss. Id. (quoting Tr. 23) (citing Tr. 344, 459). Plaintiff argues that her comprehensive medical history, spanning from 2008 through 2018, shows that stressors, including work, resulted in a loss of function. Id. at 19 (citing Tr. 181, 504, 519-520).

In response to Plaintiff's arguments, Defendant contends:

> the ALJ's determination includes several residual functional capacity limitations, present in his hypothetical to the vocational expert, which are directly related to Plaintiff's ability to maintain concentration, persistence, or pace (i.e., stay on task), and presents substantial evidence to support this residual functional capacity, consistent with his step three findings.

(Document No. 19, p. 6). Defendant contends that, contrary to Plaintiff's arguments, the ALJ's assessment and RFC are consistent with the requirements under Mascio. Id. Further, Defendant argues the ALJ's "detailed discussion" of the additional limitations laid out in the RFC and Plaintiff's impairments "is consistent with the ALJ's step three findings, and is supported by substantial evidence." Id. at pp. 6-7.

Defendant notes that "Mascio does not mandate that every ALJ decision with findings of moderate limitations in concentration, persistence or pace have a detailed analysis of the ability to stay on task." Id. at p. 7 (citing Holbrook v. Berryhill, 2018 WL 35244, at *4 (W.D.N.C. Jan. 8, 2018) ("*Mascio* declined a per se rule requiring remand where ALJs fail to perform explicit function-by-function analyses. Rather, the Court found that '[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'")).

Defendant distinguishes the instant case from Mascio. (Document No. 19, pp. 7-9). Defendant notes that remand was appropriate in Mascio because the ALJ "gave no explanation," but here, "the ALJ included additional limitations in the residual functional capacity consistent with a moderate limitation in concentration, persistence, or pace; and the limitations and step three findings are supported by substantial evidence." Id. at 7-8.

To further differentiate the cases, Defendant compares the RFCs.  Id. at 8.  Plaintiff's RFC, "in relevant part, limits her to simple routine tasks, with simple work-related decisions, no more than occasional changes in a routine work setting, and with no more than occasional interaction with the public, and frequent contact with supervisors and coworkers."  Id. (citing Tr. 20).  In Mascio the RFC "included *only* a limitation to 'unskilled work.'"  Id. (citing Document No. 16, pp. 11-12 and Mascio, 780 F.3d at 635).  Defendant argues that the additional assigned limitations here ensure that the RFC is consistent with the holding from Mascio, and the ALJ sufficiently explained "how he arrived at the limitations provided in the residual functional capacity" and "how they relate to Plaintiff's ability to consistently engage in basic work activities."  Id.

Defendant next cites Darby v. Berryhill, where Judge Conrad remarked:

> to focus merely on what limitation is included in the final RFC is nothing short of folly.  Rather, parties should focus on what precedes the final RFC.  The ALJ must reflect her final RFC determination through a narrative discussion.

2018 WL 210136 at *6 (W.D.N.C Jan 5, 2018).  Defendant cites additional cases from this district which hold that "'detailed narrative analysis' of allegations and objective findings in support of the residual functional capacity and [Plaintiff's] ability to stay on task" are sufficient.  (Document No. 19, p. 10) (quoting Smith v. Berryhill 2018 WL 3747287 at *5 (W.D.N.C. Aug. 7, 2018) and citing Rice v. Berryhill, 2018 WL 912276 at *3 (W.D.N.C. Feb. 15, 2018) and Bruce v. Berryhill, 2018 WL 736054 at *4 (W.D.N.C. Feb. 6, 2018)).

Defendant contrasts these cases with those cited by Plaintiff for "failing to meet the burden of Mascio," arguing that in Plaintiff's cases, the ALJ offers only "conclusory findings." (Document No. 19, p. 10).  Defendant emphasizes his stance that "Mascio requires only that an

11

Case 5:20-cv-00043-GCM-DCK   Document 21   Filed 09/09/21   Page 11 of 16

ALJ explain how the residual functional capacity accounts for [the limitations related to concentration, persistence, and pace]." Id. at 11.

Defendant contends that "the ALJ provided a detailed analysis of relevant evidence when considering Plaintiff's 'paragraph B' criteria, as well as in crafting a residual functional capacity that encompassed Plaintiff's workplace limitations." Id. Defendant notes:

> [i]n discussing Plaintiff's moderate limitations in concentration, persistence, or pace, the ALJ pointed to several pieces of evidence, including Plaintiff's ability to manage money, go shopping, manage her medications, and prepare basic meals for herself, as well as reported hobbies of reading and drawing. As part of the residual functional capacity analysis, the ALJ considered the available evidence.

(Document No. 19, pp. 11-12) (Tr. 19-20) (internal citations omitted). Defendant proceeds to cite various items of medical evidence from the record, concluding that "[t]he ALJ's discussion, and accompanying residual functional capacity, are therefore supported by substantial evidence and meet Mascio's standard by providing a discussion that allows a reasonable reader to understand why Plaintiff remains able to stay on task, despite her moderate limitations in concentration, persistence, or pace." (Document No. 19, p. 12).

Defendant next addresses Plaintiff's assertion that the ALJ "cherry-pick[ed] evidence to support his conclusion. Id. (citing Document No. 16, pp. 14-19). Defendant contends that Plaintiff's argument "must fail" because "Plaintiff herself ascribed minimal limitations" and to the extent she alleged limitations they were due to physical symptoms. Id. (citing Document No. 16, pp. 15-16); see also Tr. 217-225, 228-235).

Next, Defendant argues that "a change in medication indicated a good relationship with her provider" and observes that the ALJ noted "good control" of Plaintiff's symptoms from the medication. (Document No. 19, p. 14) (citing Tr. 22-23). Defendant cites medical records from

12

2015, 2016, 2017, and 2018 indicating that "[Plaintiff] had good results with Adderall" in treating her attention-deficit syndrome. Id. at 15 (citing Tr. 339, 344). Defendant cites additional medical records related to Plaintiff's mood symptoms which indicate "good improvement in her symptoms" while treating them with Lamictal. Id.

Defendant then addresses Plaintiff's final argument – that "reflections of intact memory and concentration, shown at multiple points in the record, should not have been relied upon." Id. (citing Document No. 16, pp. 19-20). Defendant contends "it is the ALJ's responsibility to consider the evidence of record, especially that shown repeatedly and longitudinally, like statements regarding Plaintiff's generally steady mental status." (Document No. 19, p. 15). Defendant concludes, asserting "[t]he ALJ's determination is reflective of [a] stable course of treatment" and the determination "is supported by substantial evidence." Id. at 16.

In her Reply, Plaintiff challenges Defendant's assertion that "the ALJ provides plentiful detail, and an accurate representation of the record, as explanation for the residual functional capacity." (Document No. 20, p. 1) (quoting Document No. 19, p. 8). Plaintiff notes the need for a "logical explanation," arguing "our precedent makes clear that meaningful review is frustrated when the ALJ goes straight from listing evidence to stating a conclusion." Id. (quoting Thomas v. Berryhill, 916 F.3d 307, 311 (4th Cir. 2019).

Plaintiff attempts to distinguish the case at hand from those cited by Defendant, including Darby. Id. Plaintiff notes that Darby involved an RFC which included limitation to "nonproduction pace," a limitation missing from this RFC. Id. at 2. Plaintiff further argues that other cases cited by Defendant are distinguishable "as thorough explanations that enable a reviewer to parse the decision's reasoning," while the ALJ's reasoning in this case is "merely record reviews followed by unexplained conclusions." Id.

13

Finally, Plaintiff contends the argument that Plaintiff has "remained overall stable," which "is reflective of this stable course of treatment," is erroneous. Id. (quoting Document No. 19, pp. 15-16). Plaintiff notes "[g]enerally, the achievement of 'stability' would not support a finding that the symptom was below a disabling level." Id. at 3-4 (citing Kelso v. Colvin, 2014 WL 378640 at *9 (M.D.N.C. July 3-, 2014)). Plaintiff concludes "such stability as there is in the record documents a level of functioning that would preclude the performance of any job on a regular and continuing basis." Id. at 4.

The undersigned finds that the ALJ incorporated non-exertional limitations related to Plaintiff's ability to stay on task, and respectfully recommends that the ALJ's decision be affirmed. The undersigned observes that the RFC includes a limitation to "simple, routine tasks with simple work-related decisions and no more than occasional changes in routine work setting," which is more descriptive than Mascio's limitation to unskilled work. (Tr.20). Further, Plaintiff rightly notes that Mascio "rejected a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis." Mascio, 780 F.3d at 636.

The undersigned finds that the ALJ considered the evidence presented and included the limitations he determined to be appropriate to accommodate these impairments. The ALJ wrote:

> [Plaintiff's] ADHD symptoms were described as only mild, and the record indicates that the claimant had good tolerance of treatment and good symptom control (2F, 5). . . The consultative examination revealed that the claimant was alert and responsive, cooperative, well organized, had coherent and goal directed thoughts, correctly recalled 6 digits forward and 5 digits backward, counted serial 3s without error, and correctly named four recent presidents.

(Tr. 22). The ALJ explained in some detail his evaluation of the evidence and concluded that the RFC accounted appropriately for Plaintiff's impairments.

The undersigned further observes that in considering Plaintiff's mental limitations, the ALJ found support for his findings in Plaintiff's written responses in the "Function Report - Adult" Exhibit No. 4E. See (Tr. 19-21, 23) (citing Tr. 217-225). In that document, *inter alia*, Plaintiff described her attendance at church three (3) times a week; her daily reading and drawing that she does "very well"; and her ability to pay her bills, count change, handle her money and savings, follow written instructions, and take care of her own personal needs. (Tr. 217-225). Plaintiff ascribes several of these abilities to her "high IQ." Id. Plaintiff's own descriptions of her abilities and/or limitations, cited by the ALJ, support finding she has the ability to stay on task in most circumstances. The ALJ finds that Plaintiff "can function well in spite of her mental impairments" and is able to "manage her symptoms and function quite well." (Tr. 23). "Accordingly, the claimant's mental limitations are no greater than what is accounted for in the residual functional capacity statement." Id.

Although additional language akin to "nonproduction pace" in the RFC might have been helpful here, the undersigned is not persuaded that the omission of such specific language related to Plaintiff's ability to stay on task necessitates remand. Unlike Mascio, the ALJ decision here is not "sorely lacking in the analysis need for us to review meaningfully [his] conclusions." See Mascio, 780 F.3d 636-637. Instead, the ALJ's decision as a whole provides sufficient analysis of Plaintiff's limitations and explanations of the ALJ's findings that are supported by substantial evidence. See (Tr. 19-23).

### IV. CONCLUSION

The undersigned finds that there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and thus substantial evidence supports the Commissioner's decision. Richardson v. Perales, 402 U.S. 389, 401 (1971); Johnson v.

Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). As such, the undersigned will recommend that the Commissioner's decision be affirmed.

## V. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that: "Plaintiff's Motion For Summary Judgment" (Document No. 15) be **DENIED**; the "Defendant's Motion For Summary Judgment" (Document No. 18) be **GRANTED**; and the Commissioner's determination be **AFFIRMED**.

## VI. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within **fourteen (14) days** of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); United States v. Benton, 523 F.3d 424, 428 (4th Cir. 208). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Id. "In order 'to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'" Martin v. Duffy, 858 F.3d 239, 245 (4th Cir. 2017) (quoting United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007)).

**IT IS SO RECOMMENDED**.

_____
David C. Keesler
United States Magistrate Judge